Donald Reed appearing for appellants, and David Goodrich appearing for Appalee. All right, Mr. Reed, do you wish to reserve some time? Sorry, I had trouble. Yes, five minutes, please. All right, and I'm just going to say that was confusing to me on the calendar because I had Mr. Heston standing two people in front of me, and two people I could see, and Mr. Reed twice in a row. So I apologize for being less than elegant in my handling there. Yes, you may come in. Thank you. In revealing my briefs to this panel, I got a little bit frustrated because I thought I buried the lead a bit with the last piece of my reply brief, and that's the purpose of the Homestead Exemption. And I'd like to just emphasize that real briefly. The ability to exempt property is intended to facilitate a debtor's fresh start. The Homestead Exemption is intended to protect the sanctity of the family home against a loss caused by a forced sale by creditors. It is intended to protect debtors and their families from being rendered homeless by virtue of an involuntary sale. California has a strong public policy that applies regardless of whether the debtors have equity in their homes or not. And in the context of the bankruptcy short sale, debtors and their families are forcibly evicted from their residences and rendered homeless. They must incur the inconvenience and expense of finding a new residence under difficult circumstances due to poor credit caused by the recent bankruptcy filing and the lack of a deposit or down payment due to the carve-out for administrative expenses and unsecured claims. I don't mean to interrupt you, but I'm hearing what you're saying. Part of the response is, hey, bankruptcy. But as interesting as this is on several levels, we have kind of a gating question for you. Do you agree with us, correct, I think, that although this was sort of an orchestrated effort and there was a sale motion and a compromise motion, the sale motion is a done deal, right? Yes. Okay. We're past appealing that. So the property has been sold. Yes. We're not challenging. There are proceeds, okay? All right. We're not challenging. Okay. So here's our question. Although it's not as detailed as you might have liked or, you know, others might have liked, there's a pot of money and there's the prospect that some of that's going to go toward some part of what we'll just call an exemption for lack of, you know, a better way of describing it, correct? Correct. If you win and the compromise is no longer approved, what happens to that money? Well, I would argue that it gets distributed pursuant to the priority scheme of the bankers. I'd argue that the lenders come back in and say, thank you, it's ours. Well, no, I think the lenders have already released their liens. Okay. You know, we could talk about that in a minute. But if that's right, I mean, how could you be aggrieved, I guess is the question. I mean, it's a standing argument, in effect. It's not exactly the one that Mr. Goodrich made. But if the reality here is if you win your argument, it's not as if you get it, you know, you don't get it halfway reversed, you get it entirely reversed, in which case we just revert to what the rights of the parties would have been and the secure creditors gets the money. So if that's right, then I think we're having a hard time understanding how you're any better off if you win here. So what I think you're trying to tell us is, well, you conceive of winning differently than we do, I guess is the answer. I guess I do. Okay. Yeah, right. Those secure creditors released their liens. They got the benefit of their bargain by releasing those liens. My argument is that those secure lenders cannot assign their lien rights to the bankruptcy estate. Well, if they couldn't, then they didn't, and then they get the money. I mean, I guess that's the question, right? Well, no. Well, they've already consented to the sale under 363-2. We're done with the sale. Right. That's not the issue anymore. Yeah, right. Exactly. We're done with the sale. Now the bankruptcy estate has a pot of money. Okay. But they don't have any – they're not – their liens, you know, in a normal context, they're not adequately protected by the sale rule. Their liens do not attach to the proceeds of that sale like you normally do in a Chapter 11. Well, let's – you know, maybe we don't want to spend – you would have to convince us that the right disposition that we reverse here is not to go back to square one but to go back to square between – you know, halfway between where we are now and where we would have been. Five. Square five instead of one. Make sense? So, counsel, what – because, counsel, what you're arguing is that their negotiation of letting the funds that would attach to their liens in full, full payment of their liens, that compromise still exists for the purpose of allowing a pot of money to be created. Right. What – so, in essence, what we're struggling with is you're suggesting undo the compromise because the compromise was not simply concede your liens. It was allow the sale to be completed and to pay this amount of money. So what we're struggling with is if we go back and say the compromise is off, then all we have is a sale order. What typically happens in a sale order is the liens attach to the proceeds. What we do know from the settlement statement is that the amount of the liens that was forgiven or were traded to the estate exceeds the equity that was created by the sale. $300,000 of equity, $348,000 was allocated to the estate by the transferred liens. That exceeds the value of what was received by the estate. So if we undo the compromise, what we're struggling with is how do we go and say, well, wait a minute. We stop when the money is created. Now we just look at who gets the money. If you undo it, then why doesn't it all just fall back to the original proposition, which is they get everything and it's entirely. Well, I think you could have approved the sale without the settlement agreement whatsoever. But that's what you've asked, isn't it? I'm sorry? That's what you've asked. You've asked us to reverse the portion of the sale which has the compromise, not the sale itself. Right. I'm asking the court to review the assignment of lien rights to the bankruptcy estate. I would argue that that sale could still be approved pursuant to 363.2, where they consent to the sale and they release the liens. This fiction that the bankruptcy estate can assert lien rights to secure a debt obligation that is owed by the debtor in the case of the bankruptcy estate is solely a fiction to deny the debtors their statutory right of expulsion. Well, let's tease that out because let's use some math. I like math. So if we sold the property, you would concede if the property sold at this number without the compromise and with all the claims, your clients would get nothing or virtually nothing. It's zero. The liens exceeded the value of the sale price. If they paid all the liens, yes. Okay. Correct. So the only reason there's anything there is because of the compromise, right? Anything to argue about. Right. There's a discounted payoff. Right. Okay. So the math was the first one. They came into this with zero prospects. They may get something. They might get zero, but they're certainly not worse off as a result of this, are they? No, I disagree entirely because that goes back to the purpose of the homestead exemption. You are forcibly evicting the debtors from their home. So your position is that they had – and this is what I'm missing because there's five layers of debt exclusive of the IRS and the six, if you count the taxes. So they're out of the money given the lien structure. In bankruptcy, they could get rid of the judgment lien, right? Their homestead would be in front of that, but everything else is rock solid ahead of them, right? Right. So tell me how they – you know, it's this carve-out that's deprived them of their homestead as opposed to the operation of law when you don't pay your various mortgages, and they were on default, right? Some of that – Right, but, you know, this goes back to, you know, what's the proper administration of bankruptcy estates? The Bankruptcy Code does not give the trustee any authority to enter into such agreements or take lien rights to secure debt obligations that are owed by the bankruptcy estate. What is the impact to the fact that the United States trustee guidelines don't say this is – in certain circumstances, this kind of transaction's just okay? What do we do with that piece of information? Say that again, that it's just okay? Well, the U.S. trustee guidelines have some parameters for these kind of transactions, correct? They do, and they recently updated them, and my understanding is that you shouldn't be administering sales – you shouldn't be selling over-encumbered assets unless there's a public policy or public interest at stake. And so in KVN, you had guns and ammunition that needed to be secured for the public interest. Well, I have kind of two questions for you – or actually, I have a comment first. I think you're kind of stuck because you're in the position of arguing effectively a per se rule that a trustee can never do this if it would deprive the debtor of a dollar of a homestead. And I think if you're trying to argue law versus legal and general, that's a non-starter. Those cases say something very different. They say you cannot violate the provisions of the code to do what you think is equity. The problem is this is one of those play in the joints areas, and that's what I think goes to Judge Taylor's question that at least the party, the watchdog here, seems to think there are circumstances in which you can do this, and you don't have to do it to dispose of a dangerous asset. There are circumstances under which it benefits the estate. The problem here is nobody has any – there's no blinds there. So I think you're stuck arguing as a matter of law can't happen. That's clearly wrong. The problem is how do we articulate where the lines are and when it's okay and when it isn't. That's, I think, our problem. Well, and I'd argue that the trustee is stuck because there's nothing in the code that even contemplates these types of transactions from being done. The debtor has a statutory right of exemption. Those proceeds are proceeds of the property, proceeds of their homestead. But for these lien assignment agreements, the debtors would have an exemption right to those sale proceeds. There wouldn't be any sale proceeds for them to have their exemption attached to. If they had simply sold the property and they hadn't had gone into the compromise, then you would have got zero, and they would have been paid less than the full amount of their liens. So you didn't lose anything by having a compromise created. He created the fund of money you now want to have utilized for the debtor's benefit. If the trustee doesn't do it, you get nothing. So how is approving the agreement been adverse to your client when they had nothing to begin with? That's where we're struggling. But they did, though. They had a family home that they were living in. We understand that. You're right. You're right. But, I mean, put slightly differently, you file a bankruptcy, you give the keys to the trustee, and the trustee gets certain powers. In some ways, this is a 363 disposition of assets and a compromise. And the real gripe here, and I'm saying this with a lot of sympathy, is had you orchestrated an abandonment, you could have gone to these lenders, and you could have had the same conversation that the trustee did. One and two, you want to get paid. Three and four, you don't want to get four closed out. There's a deal here. The problem is it wasn't your deal to cut. I mean, I think to rule the way you want us to rule, can you say, forget that it's the trustee, okay? Let's say I'm in the business of acquiring interest in assets in foreclosure, and I go to these lenders and say, I'll backstop you if you have to defend position, but I want this piece of the sale proceeds. I'm not a trustee. I'm just a person. You're saying that business deal couldn't be done? Outside of bankruptcy? Bankruptcy, I think it's the non sequitur, because the trustee's powers and authority to administer the bankruptcy estate is governed by the bankruptcy. But he has an obligation to maximize recovery for the creditors, right? Right. To liquidate assets. Yes. Liquidate assets? Mm-hmm. To liquidate assets. He certainly has the- Yes, to liquidate assets that are not burdensome and of inconsequential value to the estate. And this arguably, you know, he's getting several hundred thousand dollars. That seems to meet that definition. Yeah, but there's no provision in the bankruptcy code that allows him to enter into such transactions or to assign lien rights to the bankruptcy estate. Well, if you're trying to tell us that, unless there's a provision that says you can absolutely do X, you can't do it, I think we'd find examples where that does happen. But that's the argument you need to make, right? Yeah, that is. That is true. But the only reason for these agreements is to violate and frustrate the debtor's statutory right of exemption. And to pay creditors. That's where we get into Siegel and Jevick. Okay. Well, yeah, I would- Well, certainly Siegel and Jevick don't turn on state law rights. They turn on the bankruptcy code. Right. That's a distinction, I think. Yeah, okay. And we've taken you way past your reserve time, so- But this is really interesting. This is interesting. It is. So let's let you reserve at least a minute, and we'll hear from Mr. Goodrich. Good morning, Your Honors, if it may please the court. I'm David Goodrich, counsel for Richard Marshat, Chapter 7 trustee. I think the court's first question about what happens if the agreements are unwound is a very apt one. The reality is if the agreements are not approved, then the creditors will be restored to their rights. The mortgage creditors who were granted a security interest in the residence will still have a secured interest vis-a-vis the debtor. The debtor can't defeat that interest, Civil Code Section 1217. So the debtors will be subject to liens. Their homestead does not trump consensual liens. That is an issue that Mr. Babbage, rather, cannot get around. So the practical effect of reversing the 1919 order is that the money will return to the secure creditors, and this will be a no-asset estate. And they can't be agreed. They can't be agreed is the bottom line, right? And that was my argument, yes, in my brief, that maybe it wasn't well stated, is that the debtors are not agreed parties in this situation. They lack standing. There's no scenario where the debtors receive money if the property is sold, whether it's by the trustee, the foreclosure cell, or by the debtors. They are woefully underwater in this situation. It does strike me, though, that we're talking about somebody's home. And the argument here is what I'd call the Hail Mary Pass argument, which is if you hadn't done this, and if the property had been abandoned, they might have been able to do something. I don't know that a lender would do the same deal with a borrower that they did with you. I can see benefits to getting this done through the bankruptcy that might not be achievable by a borrower. But they would have had that Hail Mary Pass. Is that enough to give them jurisdiction, even if everything else you say or, excuse me, to give them standing, even if everything else you say is true? Your Honor, that's a good question. I guess hypothetically, with the remote possibility that they could do something before the foreclosure cell, what's in the record below is there was a foreclosure cell pending. The debtors hadn't made payments for over a couple of years. And the particular problem is this is kind of clear channel-ish in that the sale is the sale, right? Right. I'm sorry, Your Honor. That's not going anywhere. We can't change that part. And that is correct. When my client filed his motion to dismiss, the basis was that the cell has been consummated. All payments have been made from escrow. And this court denied that motion, indicating that payments were made to the trustee and trustees' counsel. That has not occurred. Those payments remain in the estate. So I, again, would urge this court to revisit dismissal of the appeal to sell motion and sell order, because everything that was supposed to occur under that order has occurred. The remaining distributions to creditors, including the trustee and his professional, is yet to be determined. That will be determined at a later point through fee applications and a final report. But, counsel, if he hadn't appealed now, if he had not brought this issue to us, then you would be arguing later that those are a fait accompli decisions that have already been no appeal was taken from and now they're binding on the bankruptcy court. And so I don't think you can use that argument that say that it's dismissible because they're not ripe, when, in fact, this is the only time he had to raise this question and no stay was granted and he asked for a stay. So what I struggle with is the standing question because I don't like the idea that he gets to undo the part that he doesn't like of the order, which is that the money is now yours or goes to the estate, but he gets the benefit of the lien reductions that you negotiated with the other lenders and that somehow that still means that the order remains in place. You can't go halfway and get what you want and ignore the burdens, but you get the benefits. That's where I struggle with this. It's either to zero, back to nothing, or not. So maybe you could address that. If I think I understand the court's question, I think there's a couple of cases that should be addressed briefly. There's a case from the Ninth Circuit. It's a bankruptcy case cited by the debtors, Enri Wilson. There's also a Tenth Circuit case, bankruptcy-level case out of Utah called Enri Christensen. The Enri Wilson case is interesting. I actually was sitting in the gallery when that hearing occurred and I watched what happened. And in that discussion, Judge Clarkson took the trustee to task for creating equity and said, didn't that come from the real estate? And the trustee essentially conceded. I think the trustee should have pointed out something important. When a creditor is giving money to the estate, it's not property of the debtor. It was not property of the debtor on the filing date. So it's not property of the estate. Instead, it's the creditor's property. The creditor is free to transfer property to the trustee if it so chooses. That prevents the debtor from claiming it as exempt. The debtor didn't have an interest in property as of the filing date, which means under 522, the debtor has no right to claim it as exempt. That really wasn't dealt with, in my opinion, in Wilson, and it was frankly ignored. Christensen is much better. The same issue arises in Christensen. There's no discussion about how it is that a creditor's property, a right, a statute, a contractual right, an interest in property transferred to the estate post-petition somehow morphs into property of the estate that the debtor can exempt as of the commencement of the filing. Those are really problematic decisions because they fail to grasp what's going on, which is, again, for the third time, it's delivery of property of another to the estate. It's not exempt. The debtor has no interest in it and never did. Can I ask you a question going back to the U.S. trustee guidelines? What's the estate going to get? You're told, Mr. Marshak's told as a trustee, we've got to see some benefit to the estate. And at the hearing, the judge just kind of goes, points his pen or whatever and says, hey, there's got to be some benefit. Wasn't it incumbent on him to determine at that time, set some parameters, say it's got to be such a percentage? Because the way this thing's going, are institute creditors going to see anything? Under the KBN standard, I think is what's important, is there going to be a meaningful distribution to creditors? And at the time that these two motions were pending, absolutely. In fact, we were looking at it, it was going to be a very good distribution to creditors. Unfortunately, the longer these appeals and other proceedings tend to go, the less the creditors might see. It doesn't mean that the trustee and his professionals cannot agree to take reductions. And we often do. I'm also a court trustee in LA. In fact, my boss is watching this. She is on the line. We do take large discounts to ensure distributions to creditors. And if this goes to the Ninth Circuit and Supreme Court, and we have to litigate to that level, the creditors will still see a distribution. We're not going to take all the money. Part of the question is how do we get our arms around that? Because from the debtor's perspective, and I know this will sound a little bit cynical to you, they should have had the right on abandonment to go make a deal. That's what they're really being deprived of at the end of the day, because you're right. To the extent the trustee does the deal, it really isn't the debtor's money. I think you're making a good point there. But what the trustee is doing is taking the opportunity to do that. And there's an element of orchestration here that I think is frustrating for the debtor, in that the sale and the compromise, they're kind of related and they're kind of not, and you have a little bit both ways on that in the argument. But at the end of the day, if there's no hard and fast rule, if there's no rule that this is not contrajevic so you can do it, but you can do it only if the numbers are kind of sort of right, the question is, should we be able to judge all that at the moment of inception? Or should we have to wait to see how it turns out? Should a trustee have to put a number on the line? Yes, thank you. And should that happen early in the process so we can figure out whether this is worth doing? Because otherwise it is a fait accompli. And then, you know, we're relying on your good faith, which I'm sure no one would ever doubt, in terms of how your fees turn out, and that's all fine. But from the debtor's perspective, if you really can't judge this at the beginning, it's just going to happen whether they like it or not. And then we'll all sort of just live with it. There was, in this case, a question about that. And in our reply brief, I don't have it in front of me, we did lay out what we thought distributions looked like at that time. And we did have a significant amount going to unsecured creditors. But you didn't commit to that. And I'm not saying you had to, but you didn't say we estimate that the cost of appeal will be this and we are telling you, Judge, unsecured creditors will get. I'm really questioning whether the judge had to do something other than just say, you better be prepared. He didn't say this directly, but I think his sense was, you better be prepared to compromise because I'm going to cut your fees. Whether he had to say, I am assuming, based on this, that there will be at least this number, and that is sufficiently substantial that I will approve it. In my experience, and I don't think there's any case law on this, there isn't a hard and fast number, at least this amount. I know that the handbook has changed, and there is some correlation between commission and distribution. But as far as what gets paid to administrative claimants versus unsecured creditors, there is no line. There is no demarcation that we can cite to. Should there be? Should there be? Well, if so, I would think that that was something that Congress would need to do, would need to legislate that. I'm not quite sure if a court should be legislating that. I agree. A different question, should the rule be, though, that the judge on a case-by-case basis determines it, and that that's something that has to be determined out of the box? I think that's the bigger question, is when do you make that? If you're approving this, and if we agree that that's part of the superstructure, is there an obligation of the trial judge to set a foundation, set a floor if not a ceiling, or a ceiling not a floor? Which piece of the room we're dealing with there? That's a great question. I can tell you as a matter of practice, it does happen frequently in certain bankruptcy courts but not others. The problem is Mr. Reed is right. There's nothing in the code that says you get to do this. That doesn't mean, in my view, you don't, but that means we're making rules. We're not making a rule. We're creating scenarios. Structure. Is there anything you want to suggest as to how that ought to be addressed? And if we're making a rule here, what ought it to be? Well, if I were writing the law, I would make a distribution, I guess floor, not ceiling, somewhere in the 5% to 10% distribution range, which I think is generally what most creditors get in most cases, and so that can be expected. I'm not saying it's not something that all creditors expect to see, but that's a pretty decent distribution. But, again, I'm basing this on a whole plot. You're asking me a question that I'm not prepared to answer. So, counsel, we've raised an issue of standing, and then there's this whole question of the carve-out, whether that's a good idea or a bad idea. Wilkinson says no. It seems like KVN says yes. Of those arguments, standing or the carve-out argument, which do you think is the stronger argument for the trustee? Which would you think we should base this decision on? I think that the carve-out, given the number, it's $300,000. There are cases where I don't have assets as a trustee that are $300,000 in total. That is a significant amount of cash, and this trustee in particular will make sure that a large portion of that goes to general unsecured creditors. I think that this carve-out under the KVN standard, it meets the standard and surpasses it significantly. Which, by the way, the unsecured, does that include the unsecured portion of the folks with whom you compromised? Are they back in the pool? As far as the taxing authorities? No, the consensual liens. No, no, they agree, and that's the other thing. Those agreements, they provided a release, which provides the estate with even more benefits. They're not back in the pool of unsecured. The judgment lien is, though, right? It was wiped out. Yeah. Okay. So that creditor, if they filed a proof of claim, would be unsecured. And the only other qualification, Counsel, is you said 300, which is from the settlement statement, the net, but you're not holding 300 today, according to your brief, right? Correct. And there's also an IRS lien that there are portions of it that secure penalties, and the trustee, I don't know if it's appropriate for the record in this matter, but I think we did designate it as a record. It has entered into agreement with the IRS to avoid, recover, and preserve the penalty portion of a tax lien, which now rids the estate of all liens. The only lingering issue are the claims, which would be the claims of Homestead that the debtors have. All right. All right. I don't have much more time. I think that might be, it may be a waste of time to try to squeeze something in 30 seconds, so I'll yield to Mr. Reed. Thank you very much. Thank you. All right, Mr. Reed, you've got a whole minute. Thank you. I'll just do a quick bullet point. Regarding the standing issue, I think the debtors clearly have a pecuniary interest that's adversely affected in this case, if nothing else, then having to relocate. Second, I think the bankruptcy court is the proper venue or proper court to determine what happens next with regard to the lien rights. Third, the trustee is not authorized to administer property of a creditor. They are, 704A1 says they're supposed to administer property of the estate and arguing that they can take a tip or an incentive payment from a secured creditor is not property of the estate, that they're basically selling the trustee's administrative powers. Regarding the distributions, the trustee has changed his course in the motion and the reply as to what distributions would be made. And then finally, I asked the panel to refer to the growth case where this same trustee was the panel trustee that resulted in a $20,000 distribution to unsecured creditors and a 2% distribution. Thank you very much. Thank you. Good arguments. It's a really interesting issue. So we appreciate hearing from you on it. We'll take the summary questions. Thank you. Thank you. All right, next matter.
judges: Taylor, Lafferty, Gan